962 F.2d 791
 58 Fair Empl.Prac.Cas. (BNA) 1189,
58 Empl. Prac. Dec. P 41,430
Charlotte ADAMS, Appellant,
v.
William P. NOLAN, Chief of Police, North Little Rock Police
Department, Jack Faulkner, Chairman, North Little
Rock Civil Service Commission, Appellees.
 No. 91-1489.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Nov. 15, 1991.
Decided April 23, 1992.
 
 Willard Proctor, Little Rock, Ark., argued, for appellant.
 Randall W. Morley, N. Little Rock, Ark., argued, for appellees.
 Before McMILLIAN and JOHN R. GIBSON, Circuit Judges, and HUNTER,* Senior District Judge.
 McMILLIAN, Circuit Judge.
 
 
 1
 Charlotte Adams ("plaintiff") appeals from a final judgment entered in the United States District Court for the Eastern District of Arkansas in favor of defendants North Little Rock Police Department ("NLRPD"), North Little Rock Police Chief William P. Nolan, and Jack Faulkner, Chairman of the North Little Rock Civil Service Commission (collectively "defendants"), following a bench trial on the merits of her claim of sex discrimination under Title VII of the Civil Rights Act of 1964, as amended by the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e et seq., and the Pregnancy Discrimination Act of 1978, 42 U.S.C. § 2000e(k). Adams v. Nolan, No. LR-C-90-183 (E.D.Ark. Feb. 26, 1991). For reversal, plaintiff argues that the district court erred in holding that (1) despite evidence of intentional discrimination, defendants successfully proved that they would have followed the same course of action regardless of their illegal animus and thus were not liable under Price Waterhouse v. Hopkins, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989) (Price Waterhouse ); and (2) plaintiff failed to establish unlawful discrimination under McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) (McDonnell Douglas ), because she was unable to show that she was treated differently from individuals outside her protected class who were similarly situated to her. For the reasons discussed below, we reverse the judgment of the district court and remand the case to the district court for further proceedings consistent with this opinion.
 
 Background
 
 2
 Plaintiff was employed as a patrol officer with the NLRPD on June 20, 1988. On March 28, 1989, plaintiff informed her supervisor, Lieutenant Ronald Burks, that she was pregnant and her expected due date was in November. In April 1989, she provided a physician's letter to Lieutenant Burks indicating that she was pregnant, that she should be assigned to lighter work duty, and that she would need six weeks of maternity leave at the end of her pregnancy. Plaintiff's request for a lighter duty assignment was denied under an NLRPD leave policy, General Order C87-019G.
 
 
 3
 The NLRPD implemented General Order C87-019G in September 1987 after two other female police officers with the NLRPD, Leslie Houser and Kristen Rickard, had become pregnant. Officer Houser, the first to become pregnant, was given light duty work due to her pregnancy. However, when Officer Rickard informed her supervisor of her pregnancy on September 14, 1987, she was told that she could not be assigned light duty work under a new leave policy which, at that time, had not yet been formally implemented.[1] Two weeks later, on September 28, 1987, General Order C87-019G was formally implemented. It provides in pertinent part:
 
 
 4
 Employees who suffer non-work related injury or illness that results in temporary disability including pregnancy, miscarriage, abortion, childbirth, and recovery thereof, will be granted use of accumulated sick leave, vacation leave, and/or other earned paid time off. Upon expiration of the aforementioned paid leave, the employee must take an unpaid leave of absence if additional time off is needed for recovery. Leave of absence will be granted in 30 day segments. Generally, a leave of absence must not extend beyond three continuous 30-day periods. Additional leave of absence may be granted at the discretion of the Chief of Police and Civil Service Commission. No light duty assignments will be made for employees due to non-work related injury or illness.
 
 
 5
 (Emphasis added.) Plaintiff testified that, at the time she informed Lieutenant Burks of her pregnancy, he stated to her that General Order C87-019G was adopted because of a "rash of pregnancies" at the NLRPD.
 
 
 6
 After plaintiff's request for light duty work was denied by the NLRPD, she sought review of her request by the North Little Rock Civil Service Commission. The Commission did not respond to her inquiries.
 
 
 7
 For the next several months, plaintiff continued to request light duty work assignments. For example, she requested a desk job that was available on a "fill in" basis when the regular person was unavailable. She was never given the desk assignment. During this same period of time, officers David Bertelin and Joe Bradley were allowed to fill in at the desk job because of temporary injuries that were not job-related. Another officer, Mike Arnold, was assigned the desk job for the month of August 1989 due to medical problems that were not job-related. Plaintiff and Sergeant Swain, her supervisor at the time, both testified that plaintiff had specifically requested the August desk assignment after she learned from Sergeant Swain that it would be available. The job was given to Officer Arnold instead.
 
 
 8
 As a result of the NLRPD's refusal to give her light duty work, plaintiff stopped working in early July 1989. Initially she took accumulated paid vacation days. When her vacation time expired on July 31, 1989, she took an unpaid leave of absence. She was on unpaid leave for a total of twenty-six weeks. After plaintiff returned to work, she was no longer a patrol officer but went to work in the NLRPD's Services and Support Division.
 
 
 9
 Plaintiff brought this action in the United States District Court for the Eastern District of Arkansas in March 1990. She claims that defendants discriminated against her on the basis of her sex, in violation of Title VII of the Civil Rights Act of 1964, as amended by the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e et seq., and the Pregnancy Discrimination Act of 1978, 42 U.S.C. § 2000e(k).[2] Her case proceeded to trial on January 30, 1991. The case was tried as a disparate treatment case under McDonnell Douglas. In addition to analyzing the case under McDonnell Douglas, slip op. at 7-9, the district court also found direct evidence of discriminatory intent and analyzed the case under Price Waterhouse. Id. at 3-7. However, the district court held that under either McDonnell Douglas or Price Waterhouse, plaintiff failed to meet her ultimate burden of persuasion. Id. at 9-11.
 
 
 10
 On appeal, plaintiff argues that the district court clearly erred in its factual determinations and that she met her ultimate burden of proving sex discrimination under Title VII. We analyze this case under the McDonnell Douglas-Burdine[3] disparate treatment framework only.[4] Under this analysis, we hold that the district court committed errors of law and clear errors of fact.
 
 Discussion
 
 11
 Under the familiar McDonnell Douglas-Burdine framework for analyzing employment discrimination cases based upon a disparate treatment theory, the analysis proceeds in three stages: (1) prima facie case; (2) nondiscriminatory reason(s); (3) pretext. See Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-53, 101 S.Ct. 1089, 1093-94, 67 L.Ed.2d 207 (1981) (Burdine ). First, plaintiff must establish her prima facie case. In other words, plaintiff "must prove by a preponderance of the evidence that she applied for an available position for which she was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination." Id. at 253, 101 S.Ct. at 1094. This burden "is not onerous." Id. Specifically, in the present case, plaintiff had the initial burden of showing:
 
 
 12
 1) that she was in a protected category;
 
 
 13
 2) that she was qualified for and applied for a light duty assignment;
 
 
 14
 3) that she was denied the light duty assignment; and
 
 
 15
 4) that after she was denied the assignment, the position remained open to persons of her qualifications.[5]
 
 
 16
 See id. at 253 n. 6, 109 S.Ct. at 1792 n. 6 (citing McDonnell Douglas, 411 U.S. at 802, 93 S.Ct. at 1824).
 
 
 17
 There is no dispute that plaintiff established the first three elements of her prima facie case. As to the fourth element, the evidence in the record clearly shows that after plaintiff was denied the August 1989 desk position, it was assigned to Officer Arnold who himself had physical impairments unrelated to his job. The fact that the job was given to another patrol officer with non-work-related impairments, without any evidence that Officer Arnold was any more qualified for the desk job than plaintiff, is conclusive proof that the job remained open to others with qualifications similar to plaintiff's, which is all that was necessary for plaintiff to establish the fourth element of her prima facie case. An inference of unlawful discrimination was therefore established. See Burdine, 450 U.S. at 253-54, 101 S.Ct. at 1093-94.
 
 
 18
 Once plaintiff established her prima facie case, the burden then shifted to defendants "to articulate some legitimate, nondiscriminatory reason" for denying plaintiff the assignment. Id. at 253, 101 S.Ct. at 1093, (citing McDonnell Douglas, 411 U.S. at 802, 93 S.Ct. at 1824). Defendants' only evidence of a legitimate nondiscriminatory reason for the decision to deny plaintiff the August 1989 desk job was Lieutenant Burks' testimony that "it didn't fit within [the leave policy, General Order C87-019G,]" to give her the assignment.
 
 
 19
 We seriously question whether the leave policy itself even qualifies as a "nondiscriminatory" basis for defendants' actions. On its face, the order strongly suggests an intent to discriminate against women who are pregnant or have pregnancy-related conditions, which is precisely the type of discrimination expressly prohibited by the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k). The only so-called "injuries" or "illnesses" that are specifically identified in General Order C87-019G are pregnancy and pregnancy-related conditions.[6] Nonetheless, because the order purports to apply to anyone with a "non-work related injury or illness," we will treat it as if it is a facially nondiscriminatory policy and complete the McDonnell Douglas-Burdine analysis.
 
 
 20
 At the final or "pretext" stage of the analysis, plaintiff may carry her ultimate burden of persuasion by demonstrating that the legitimate nondiscriminatory reason proffered by defendants was not the true reason for the adverse employment action, but is merely a pretext for discrimination. Burdine, 450 U.S. at 253, 101 S.Ct. at 1093; McDonnell Douglas, 411 U.S. at 804, 93 S.Ct. at 1825. As the Supreme Court explained in Burdine, "[plaintiff] may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." 450 U.S. at 256, 101 S.Ct. at 1095 (cited in United States Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 716, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983) (Aikens )). In McDonnell Douglas, the Supreme Court also noted that certain evidence is "especially relevant" if it demonstrates that employees who are similarly situated to the plaintiff in all respects, except that they are outside her protected class, are not subjected to the same adverse employment action. 411 U.S. at 804, 93 S.Ct. at 1825.
 
 
 21
 In the present case, plaintiff clearly demonstrated that defendants' reason for denying her the August 1989 desk job was unworthy of credence.[7] It is beyond belief that defendants denied plaintiff the assignment because they adhere to the policy set forth in General Order C87-019G. The exact job was ultimately given to another officer who also fit within the same provision of General Order C87-019G in all respects except that his medical impairments were not pregnancy-related. The fact that the position was assigned to Officer Arnold is conclusive evidence that similarly situated individuals were treated differently with respect to the enforcement of the policy.
 
 
 22
 The district court reasoned that although "plaintiff's proof established that other patrol officers with injuries or disabilities which were not work related did, in fact, receive the desk assignment temporarily to accommodate their disabilities[,] ... the evidence was that these assignments to the desk were only for brief periods of time, not for the four or five months requested by the plaintiff." Slip op. at 8. On this basis, the district court concluded that plaintiff and Officers Bertelin, Bradley and Arnold, were not similarly situated. This conclusion was clearly erroneous for several reasons.
 
 
 23
 Plaintiff and Officers Bertelin, Bradley and Arnold, were similarly situated in the critical sense that all four sought lighter work assignments than their regular patrol duties as a result of physical impairments that were unrelated to their jobs. The district court distinguished plaintiff from Bertelin, Bradley and Arnold, however, on grounds that she sought a light duty assignment for a longer term than the others. The evidence in the record clearly shows that plaintiff was willing to fill in at the desk for the month of August and that she in fact specifically requested this one-month position prior to leaving her job in early July 1989. Sergeant Swain testified that when he informed plaintiff that the desk job would be available for the month of August 1989, she expressed interest in the position. Plaintiff testified that, after discussing the opening with Sergeant Swain, she went to Lieutenant Burks to request the one-month assignment. Nothing in the record suggests that she ever requested the position for any longer than the one month she understood it to be available. Lieutenant Burks did not deny that plaintiff requested the one-month desk position, nor did he indicate that she requested it for any longer than it was available. He testified that he could not remember anything that occurred in that time frame other than that he "asked for volunteers throughout the shift and Officer Arnold volunteered to take it for the whole month," and that he "discuss[ed] [plaintiff's] pregnancy with the captain and [they] went through [General Order C87-019G] and decided it didn't fit within the order."[8]
 
 
 24
 Thus, setting aside the district court's clear errors of fact, and completing the analysis under McDonnell Douglas- Burdine, we hold that defendants' proffered reason for the adverse action against plaintiff was a pretext for intentional discrimination on the basis of sex, thus concluding the McDonnell Douglas- Burdine analysis in plaintiff's favor. Accordingly, we hold that plaintiff is entitled to relief on her Title VII sex discrimination claim.
 
 
 25
 For the foregoing reasons, we reverse the judgment of the district court and remand with directions to the district court to enter judgment for plaintiff against defendant North Little Rock Police Department. The district court shall make further findings of fact and conclusions of law concerning the remaining issues, including the liability of the other defendants, if any, and plaintiff's remedy. We decline at this time to express an opinion regarding the applicability of the Civil Rights Act of 1991 to plaintiff's remedy and her right to a jury trial on damages and leave those questions to the district court to be determined on remand.
 
 
 
 *
 The Honorable Elmo B. Hunter, Senior United States District Judge for the Western District of Missouri, sitting by designation
 
 
 [1]
 Officer Rickard also testified that she applied for openings in the detective division twice during her pregnancy and both times she was passed over for another officer. The first time she was told that the officer who got the job had more seniority. The second time, the officer who got the job was junior to her, but, she was told, he applied for the job first
 
 
 [2]
 Title VII provides in pertinent part:
 (a) It shall be an unlawful employment practice for an employer--
 (1) ... to discriminate against any individual with respect to his [or her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin;....
 42 U.S.C. § 2000e-2(a)(1).
 (k) The terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes....
 Id. § 2000e(k).
 
 
 [3]
 Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) (Burdine )
 
 
 [4]
 This case is not appropriate for analysis under Price Waterhouse because there is no evidence of "mixed motives." See Price Waterhouse, 490 U.S. at 247 & n. 12, 109 S.Ct. at 1788 & n. 12. The evidence does not suggest that there were both discriminatory and nondiscriminatory reasons for denying plaintiff light duty work and that the nondiscriminatory reasons alone justify the result. Rather, defendants' proof and theory of defense were based upon a denial of discriminatory intent. Defendants' sole proffered reason for denying plaintiff light duty work was the alleged nondiscriminatory application of the leave policy. Accordingly, we also need not reach the issues of whether and to what extent this case is affected by provisions of the Civil Rights Act of 1991 which overrule Price Waterhouse in part
 
 
 [5]
 The district court erred in its statement of the fourth element of plaintiff's prima facie case. The district court defined it as follows:
 4) that persons who were not pregnant but who had disabilities unrelated to their jobs (and were thus similarly situated to the plaintiff) were given light duty assignments.
 Slip op. at 8.
 
 
 [6]
 In view of the language of the leave policy and other evidence in the record, this case could have been analyzed as a direct evidence-disparate treatment case under Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985) (Thurston ). The district court specifically found direct evidence of discrimination based upon the language of the leave policy, the timing of its implementation (just two weeks after Officer Rickard informed her supervisor of her pregnancy), Lieutenant Burks' reference to a "rash of pregnancies," and instances where the NLRPD passed over Officer Rickard or plaintiff for light duty assignments that became available during their pregnancies--despite their specific requests for the assignments--and then assigned the positions to other officers. Slip op. at 4-5. Under Thurston, if there is direct evidence of discrimination, the first stage of the McDonnell Douglas formula, the prima facie case, may be avoided because there is no need for the plaintiff to create an inference of discrimination. 469 U.S. at 121, 105 S.Ct. at 621
 
 
 [7]
 Despite the language of Burdine, there remains some disagreement among the circuits as to whether discrediting defendants' proffered reason alone, without additional direct evidence of discrimination, is enough for plaintiff to carry her ultimate burden of proving intentional discrimination. See Catherine J. Lanctot, The Defendant Lies and the Plaintiff Loses: The Fallacy of the "Pretext-Plus" Rule in Employment Discrimination Cases, 43 Hastings L.J. 57, 71-91 (1991). The majority rule, followed by this circuit, is that direct evidence is not required, provided pretext is proven by a preponderance of the evidence. See id. at 71-72 & 73 n. 50; MacDissi v. Valmont Indus., Inc., 856 F.2d 1054, 1059 (8th Cir.1988) ("[A]n employer's submission of a discredited explanation for firing a member of a protected class is itself evidence which may persuade the finder of fact that such unlawful discrimination actually occurred."); accord Aikens, 460 U.S. at 714 n. 3, 103 S.Ct. at 1481 n. 3. In any case, were we to apply the minority "pretext-plus" rule requiring direct evidence of discrimination, plaintiff's case would still pass muster because there was direct evidence of intentional discrimination. See supra note 6 (citing slip op. at 4-5)
 
 
 [8]
 Both Lieutenant Burks and William P. Nolan, Chief of Police, testified that they did not consider the desk job to be a "light duty assignment," as they would define the term. The point is, however, regardless of whether the desk job technically is a "light duty assignment," defendants used the leave policy, which states "[n]o light duty assignments will be made for employees due to non-work related injury or illness," to deny plaintiff the desk job. As a result, she was unable to continue working and had to take an early unpaid leave. Defendants did not, however, use the leave policy to deny other officers the desk job when they requested the assignment because of non-work-related medical conditions that were not pregnancy-related