**Sandra NELSON, Plaintiff,**

v.

**WITTERN GROUP, INC., and Kermit Anderson, Defendants.**

**No. 4–00–CV–90112.**

United States District Court,
S.D. Iowa,
Central Division.

Jan. 29, 2001.

Charles E. Gribble, Des Moines, IA, for plaintiff.

David L. Charles, Des Moines, IA, for defendants.

## ORDER

PRATT, District Judge.

Before the Court is Defendants' "Motion for Summary Judgment" and request for oral argument filed November 7, 2000. Plaintiff filed her resistance on December 5, 2000. The Defendants replied on December 15, 2000. The parties have filed statements of disputed and undisputed facts, as well as supporting briefs. The Court has also reviewed proffered deposition and affidavit testimony. Oral argu-

ment is not necessary. The matter is fully submitted.

## I. Facts

This is an action premised on allegations of pregnancy and sex discrimination, in violation of federal and state civil rights laws. The Court will state the facts of the case in a light most favorable to the non-moving party, *see Harlston v. McDonnell Douglas Corp.*, 37 F.3d 379, 382 (8th Cir. 1994).

Sandra Nelson, the Plaintiff, was employed by the Defendant Wittern Group, Inc. as a legal assistant from approximately October or November of 1998 to July 15, 1999. Defendant Kermit Anderson was the company's general counsel and the Plaintiff's supervisor during this time period. The Plaintiff became pregnant sometime in December of 1998. Her last day of work before giving birth was July 9, 1999. On July 10, 1999, the Plaintiff gave birth to a child. On July 15, 1999, the Plaintiff returned to work to file paperwork for insurance and short-term disability benefits in connection with her newborn child. That same day, Mr. Anderson informed the Plaintiff that her position with the company had been eliminated. Two female colleagues took over the Plaintiff's duties. Administrative proceedings, detailed in the Complaint at page 2, and this lawsuit, which is in three counts, followed.

Count I of Plaintiff's First Amended and Substituted Complaint ("Complaint") charges the Defendants with pregnancy discrimination in violation of the Pregnancy Discrimination Act ("PDA") of 1978, codified within Title VII of the Civil Rights Act of 1964 at 42 U.S.C. § 2000e(k). Count II charges the Defendants with sex discrimination in violation of 42 U.S.C. § 2000e-2. Count III asserts sex and pregnancy discrimination in violation of Iowa Code § 216.6. The Plaintiff prays for compensatory and punitive damages, and seeks costs and attorney fees.

The Court will discuss additional facts to the extent necessary.

## II. Standard for summary judgment

"The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Handeen v. Lemaire*, 112 F.3d 1339, 1345 (8th Cir. 1997) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The precise standard for granting summary judgment is well-established: summary judgment is properly granted when the record, viewed in the light most favorable to the nonmoving party and giving that party the benefit of all reasonable inferences, shows that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Harlston v. McDonnell Douglas Corp.*, 37 F.3d 379, 382 (8th Cir.1994). The court does not weigh the evidence nor make credibility determinations, rather the court only determines whether there are any disputed issues and, if so, whether those issues are both genuine and material. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253–54, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

The purpose of summary judgment is to "pierce the boilerplate of the pleading and assay the parties' proof in order to determine whether trial is actually required." 11 *Moore's Federal Practice* 3d, § 56.02 at 56–20 (Matthew Bender 3d ed.1997) (citing *Wynne v. Tufts Univ. School of Medicine*, 976 F.2d 791, 794 (1st Cir.1992), *cert. denied*, 507 U.S. 1030, 113 S.Ct. 1845, 123 L.Ed.2d 470 (1993)). Federal courts, however, must proceed with caution on summary judgment motions in

the employment context. As the Eighth Circuit recently noted, "[t]his court has repeatedly cautioned that summary judgment should seldom be granted in the context of employment actions, as such actions are inherently fact based.... Summary judgment is not appropriate unless all the evidence points one way and is susceptible to no reasonable inferences sustaining the position of the nonmoving party." *Hindman v. Transkrit Corp.*, 145 F.3d 986, 990 (8th Cir.1998) (citations omitted).

## III. Discussion

### A. Count I

In Count I, the Plaintiff alleges that the Defendants terminated her position because of her pregnancy in violation of Title VII. Title VII makes it "an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex...." 42 U.S.C. § 2000e–2(a). Congress amended Title VII in 1978 to explicitly extend protection to pregnant women:

> The terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth or related medical conditions shall be treated the same for all employment-related purposes ... as

other persons not so affected but similar in their ability or inability to work.... 42 U.S.C. § 2000e(k) (overruling *General Elec. Co. v. Gilbert*, 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976) which had held that discrimination on the basis of pregnancy was not sex discrimination under Title VII).

 To the extent Count I is asserted against Kermit Anderson in his individual capacity, the Defendants' motion is granted. It is well-settled that supervisors may not be held individually liable under Title VII. *See, e.g., Bales v. Wal–Mart Stores, Inc.*, 143 F.3d 1103, 1111 (8th Cir.1998).

 With respect to Plaintiff's pregnancy discrimination claim against her employer, the Defendants' motion is denied. Under the *McDonnell Douglas–Burdine*[1] framework, the Court finds that genuine issues of material fact exist going to whether the Wittern Group discriminated against the Plaintiff based on her pregnancy.[2] Under *McDonnell Douglas*, the analysis proceeds in three steps: first, Plaintiff must establish a prima facie case; then the burden shifts to the Defendants to articulate a legitimate, nondiscriminatory reason for their actions; and finally, the Plaintiff must show that the Defendants' proffered reason is pretextual. *See generally Adams v. Nolan*, 962 F.2d 791 (8th Cir. 1992) (analyzing PDA claim under *McDonnell Douglas* ). The Plaintiff has the "ultimate burden" of proving intentional discrimination based on her protected status. *See Burdine*, 450 U.S. at 253, 101 S.Ct. 1089. The Supreme Court recently clari-

---

1. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

2. The parties analyze this case under the *McDonnell Douglas–Burdine* framework (a framework which relies on circumstantial or indirect evidence of discrimination), as opposed to the analysis used in *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989) (an analysis which depends on direct evidence of discrimination). The Court sees no reason to depart from a *McDonnell Douglas–Burdine* analysis already established by the parties.

fied the kind and amount of evidence necessary for a civil rights plaintiff to meet her ultimate burden and thereby survive summary judgment: "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, ——, 120 S.Ct. 2097, 2109, 147 L.Ed.2d 105 (2000).[3]

■ To prove her prima facie case under *McDonnell Douglas*, the Plaintiff must show: (1) she was a member of a protected class; (2) she was qualified for the job; (3) she experienced an adverse employment action; and (4) some additional showing that her protected status was a factor in the termination or that she was terminated under circumstances which give rise to an inference of unlawful discrimination. *See Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 776 (8th Cir.1995) (elements 1–3 same; under 4th prima facie element, plaintiff required to show some "additional showing" that protected status was "a fac-

tor" in the termination); *Adams v. Nolan*, 962 F.2d 791, 794 (8th Cir.1992) (elements 1–3 same; under final prima facie element, plaintiff required to show that adverse employment conduct occurred "under circumstances which give rise to an inference of unlawful discrimination").[4] "The burden of establishing a prima facie case of disparate treatment is not onerous." *Burdine*, 450 U.S. at 253, 101 S.Ct. 1089.

■ Plaintiff easily satisfies the first 3 elements of her prima facie case: she was pregnant and gave birth to a child (and therefore part of a protected class); she was qualified; and she was laid off. As to the 4th element, the Court finds that the Plaintiff has come forward with an additional showing that her pregnancy was a factor in the termination, or alternatively, that she was terminated under circumstances giving rise to an inference of unlawful discrimination. Plaintiff's "additional" evidence, as revealed in depositions and affidavits provided to the Court, includes: (1) In October of 1998, when she first interviewed for the job at the Wittern Group, Mr. Anderson asked the Plaintiff is

3. Although *Sanderson* involved analysis of a Rule 50 motion under the Federal Rules of Civil Procedure, that Court's analysis applies equally to summary judgment motions under Rule 56. *See Sanderson*, 530 U.S. at ——, 120 S.Ct. at 2110 (the two standards "mirror[ ]" each other) (citations omitted).

4. The prima facie elements vary by case. *See Burdine*, 450 U.S. at 254, 101 S.Ct. 1089 ("facts necessarily will vary in Title VII cases," and the ... prima facie proof required from respondent is not necessarily applicable in every respect in differing factual situations") (citation omitted). The Court is satisfied that its phrasing of the 4th prima facie element adequately states the law as applied to this particular Title VII case involving an alleged pregnancy-based termination. For other PDA cases using a similar prima facie formulation, *see Sigmon v. Parker Chapin Flattau & Klimpl*, 901 F.Supp. 667 (S.D.N.Y.1995) (plaintiff returned to work after maternity leave and was

terminated in a reduction-in-force; plaintiff had to show for the 4th element of prima facie case that her "discharge occurred in circumstances giving rise to an inference of discrimination based on her membership in the protected class") (citations omitted); *McDonnell v. Certified Eng'g & Testing Co., Inc.*, 899 F.Supp. 739 (D.Mass.1995) (employee dismissed after informing employer she was pregnant; for the 4th element, plaintiff had to show "layoff was not undertaken in a gender neutral manner or ... employer intended to discriminate on the basis of gender or pregnancy in reaching its decision to terminate her"); *but see Marzano v. Computer Science Corp. Inc.*, 91 F.3d 497, 507–08 (3d Cir.1996) (plaintiff laid off after giving birth to son; court rejected, as part of 4th prima facie element, the requirement that plaintiff show "additional evidence" of unlawful discrimination; plaintiff need only show that "other unprotected workers were retained") (citations omitted).

she were married, if she had any immediate plans to get married, and if she wanted to have children, Nelson Depo. at 120, 124; (2) in January of 1999, her supervisor Mr. Anderson, told her that "the Witterns probably wouldn't look good upon [her] being [a] single, unwed parent living [with an unmarried male companion]," [5] Nelson Depo. at 118–119, 127–28; (3) after working on July 9, 1999, Plaintiff left to give birth to her child; (4) on July 10, 1999, the Plaintiff gave birth; (5) on July 15, 1999, the Plaintiff returned to work to turn in paperwork for insurance and short-term disability and was told by Mr. Anderson that her job had been eliminated, Nelson Depo. at 171–72; (6) sometime in October of 1998, Rhonda Davey, a former Wittern Group employee, informed the company's general manager that she was pregnant, to which the general manager asked Ms. Davey if she were "going to get married;" when Ms. Davey replied "eventually," the general manager stated: "that is good, because the Wittern Family frowns on unwed single mothers and does not look fa-

vorabl[y] upon its employees living in sin," Affidavit of Rhonda Davey; (7) while on maternity leave, Ms. Davey was terminated in August of 1999, about a month after she gave birth to her child; (8) Mr. Anderson could not recall other Wittern employees being terminated after returning from a leave, Anderson Depo. at 53. The Court finds that the Plaintiff has come forward with more than enough credible evidence to make a showing that her pregnancy was a factor in her termination, or alternatively, that she was terminated under circumstances giving rise to an inference of unlawful discrimination.[6] *See* 29 C.F.R. Pt. 1604, App.[7]; *King v. Trans World Airlines, Inc.*, 738 F.2d 255 (8th Cir.1984).[8]

■ The Defendants assert that the Wittern Group fired the Plaintiff, not because of her pregnancy, but because "office automation" resulted in overstaffing, which in turn required the elimination of the Plaintiff's position. *See* Br. in Supp. of Defs.' Mot. for Summ. J. at 3–4; Defs.' Reply Br. at 2. In so asserting, the Defen-

---

5. The unmarried male friend is identified as "Tim," *see* Nelson Depo. at 118; the record does not state this person's last name.

6. It is true, as the Defendants point out in their motion papers, that Judge Magill, in *Piantanida v. Wyman Center*, 116 F.3d 340 (8th Cir.1997), held as a matter of law that a claim of discrimination based on one's status as a "new parent" was not cognizable under the Pregnancy Discrimination Act. Were the Plaintiff's claim based solely on an alleged discriminatory bias against being a "new parent," then clearly *Piantanida* would compel a judgment for the Defendants. This case is markedly different, not only because the alleged discriminatory bias here is against a "single unwed parent" but also because the additional facts explained in the text above, when considered in the aggregate, give rise to strong inferences of discrimination based on pregnancy.

7. In the question/answer section of the regulations, question/answer no. 9 contains the

following: "Q. Must an employer hold open the job of an employee who is absent on leave because she is temporarily disabled by pregnancy-related conditions? A. Unless the employee on leave has informed the employee that she does not intend to return to work, her job must be held open for her return on the same basis as jobs are held open for employees on sick or disability leave for other reasons."

8. Unlike other job applicants, the employer in *King* asked the plaintiff interview questions "about her pregnancy during her probationary employment, her marital status, the nature of her relationship with another TWA employee, the number of children she had and whether they were illegitimate, her childcare arrangements, and her future childbearing plans." *King*, 738 F.2d at 256. This evidence, together with the employer's refusal to hire her constituted proof of sexual discrimination under the PDA. *See id.* at 259.

dants have satisfied their burden of coming forward and articulating a legitimate, nondiscriminatory reason for their actions.

■ Under the *McDonnell Douglas–Burdine* framework, once the Defendants offer a nondiscriminatory reason for their conduct, the Plaintiff must show that the Defendants' proffered reason is pretextual. *See Reeves*, 530 U.S. at ——, 120 S.Ct. at 2106. In this case, the Plaintiff contends that the Defendants' articulated reason for its conduct—namely, overstaffing due to office automation—is, in her words, "a sham." As explained more fully in her resistance brief, the Plaintiff, in substance, claims that the office was not overstaffed; that in fact, the Plaintiff and two female colleagues who worked nearby had plenty of work to do. *See, e.g.*, Anderson Depo. at 38. The Plaintiff also claims that prior to taking leave, she asked Mr. Anderson if she would have a job when she got back and he told her "I didn't need to worry about it." Nelson Depo. at 50.

Reading this record in a light most favorable to the non-moving party, and drawing all reasonable inferences therefrom, the Court finds that a reasonable jury could conclude the Defendants' stated reasons to be a pretext, and that, based on record as a whole, the Wittern Group intentionally discriminated against Plaintiff because of her protected status. *See Burdine*, 450 U.S. at 253, 101 S.Ct. 1089; *Reeves*, 530 U.S. at ——, 120 S.Ct. at 2109. Therefore, to the extent Count I is asserted against the Wittern Group, the Defendants' motion is denied.

### B. Count II

In Count II of her Complaint, the Plaintiff asserts against the Defendants a claim of sex discrimination in violation of Title VII, 42 U.S.C. § 2000e–2, based on the same set of facts that form the basis of her PDA claim. As explained before, Mr. Anderson, as the Plaintiff's supervisor,

could never be held individually liable under Title VII. *See Bales*, 143 F.3d at 1111. The Defendants' motion for summary judgment is granted to the extent Count II is directed at Mr. Anderson.

The Defendants urge dismissal of Count II as to the Wittern Group because the Plaintiff failed to administratively exhaust her remedies with respect to her sex discrimination claim. As stated in their brief, "Nelson in her administrative complaint checked only the box for pregnancy discrimination and focused solely on her pregnancy; she included no comments likely to lead the agency to investigate the possibility that Wittern would have terminated her, even if she had not been pregnant, just because she was female." *See* Br. in Supp. of Defs.' Mot. for Summ. J. at 5–6 (citation omitted).

■ As a general rule, a Title VII plaintiff must file a charge of discrimination with the EEOC before bringing a civil suit, *see* 42 U.S.C. § 2000e–5(b), "but the scope of the subsequent action is not necessarily limited to the specific allegations in the charge.... In determining whether an alleged discriminatory act falls within the scope of a Title VII claim, the administrative complaint must be construed liberally in order not to frustrate the remedial purposes of Title VII, ... and the plaintiff may seek relief for any discrimination that grows out of or is like or reasonably related to the substance of the allegations in the administrative charge." *Nichols v. American Nat'l Ins. Co.*, 154 F.3d 875, 886–87 (8th Cir.1998)(internal quotations and citations omitted). The "crucial element" in construing a charge is the Plaintiff's statement of facts explaining the basis of the complaint. *See Nicol v. Imagematrix, Inc.*, 767 F.Supp. 744, 752 (E.D.Va.1991) (quoting 4 J. Cook & J. Sobieski, *Civil Rights Actions* ¶¶ 21.20[B] at 21–246).

In her administrative complaint, the Plaintiff only checked the box marked "pregnancy" and did not check the box for sex. In her one-page narrative, the Plaintiff, in substance, complains that her termination grew out of her pregnancy and subsequent child birth. Since discrimination based on pregnancy is, by statute, discrimination based on sex, *see* 42 U.S.C. § 2000e(k) ("The terms 'because of sex' or 'on the basis of sex' include ... because of or on the basis of pregnancy ...."), it seems reasonable to conclude that an administrative charge based on pregnancy discrimination can support a later-added judicial charge based on sex discrimination. Were the Plaintiff seeking to add a judicial charge based on sexual harassment, she would not be so fortunate. *Cf. Cheek v. Western and Southern Life Ins. Co.*, 31 F.3d 497, 503 (7th Cir.1994) ("a claim of sexual harassment cannot be reasonably inferred from allegations in an EEOC charge of sexual discrimination") (citations omitted). As it stands, the Plaintiff's sex and pregnancy discrimination claims should, at this stage, be allowed to proceed side-by-side. *See Nicol*, 767 F.Supp. at 746, 753 (administrative charge alleged "only pregnancy discrimination"; judicial count alleging "sex discrimination based on pregnancy" was allowed); *see also Newport News Shipbuilding and Dry Dock Co., v. E.E.O.C.*, 462 U.S. 669, 684, 103 S.Ct. 2622, 77 L.Ed.2d 89 (1983) ("The Pregnancy Discrimination Act has now made clear that, for all Title VII purposes, discrimination based on a woman's pregnancy is, on its face, discrimination because of her sex."). Accordingly, the Defendants' motion for summary judgement on Count II as against the Wittern Group is denied.

### C. Count III

In Count III of her Complaint, the Plaintiff alleges "sex and pregnancy discrimination" in violation of Iowa Code § 216.6. This part of the Complaint alleges that the "Defendants discriminated against Plaintiff on the basis of her gender by denying her leave and terminating her employment subsequent to the birth of her child."

The Iowa law, *see* Iowa Code § 216.6(2)(a), is similar to the federal PDA and provides, in relevant part: "A written or unwritten employment policy or practice which excludes from employment applicants or employees because of the employee's pregnancy is a prima facie violation of [chapter 216]" of the Iowa Civil Rights Act ("ICRA").

To the extent Count III is asserted against Mr. Anderson in his individual capacity, the Court grants the Defendants' motion. Mr. Anderson is being dismissed not because Iowa law doesn't allow for individual supervisory liability; in fact, supervisors can be found individually liable. *See Vivian v. Madison*, 601 N.W.2d 872 (Iowa 1999). Nor is it dispositive that the Plaintiff, in filling out her administrative complaint, failed to expressly name Mr. Anderson as the person who discriminated against her. *See Greenwood v. Ross*, 778 F.2d 448, 451 (8th Cir.1985) (omitting a party's name from the administrative charge "does not automatically mandate dismissal of a subsequent action under Title VII"). After all, Mr. Anderson was identified in the Plaintiff's narrative as the individual who informed her about her job termination.

The problem is somewhat more fundamental: the record cannot support a finding of liability against Mr. Anderson. Before an individual may be found liable under Iowa civil rights law, he or she must be found to have "control [of] the company's hiring decisions." *Vivian*, 601 N.W.2d at 876 (citing *Sahai v. Davies*, 557 N.W.2d 898, 901 (Iowa 1997)). In this case, and reading the record in a

light most favorable to the Plaintiff, the Court finds that Mr. Anderson lacks sufficient culpability to be found individually liable under Iowa law. In her administrative complaint, the Plaintiff recites that Mr. Anderson was the person who delivered the bad news of her termination. She then goes on to state that "the decision to eliminate [her] position was made by higher-level management," namely the company's vice-president John Bruntz. In her deposition testimony, the Plaintiff is unable to implicate Mr. Anderson in her termination beyond his role as a high-ranking messenger. She. comes close to outright naming Mr. Anderson as the decision-maker in her firing, but for whatever reason, cannot definitively do so. The following exchange is illustrative:

Q. Now, you also said here that "Mr. Anderson informed me that the decision to eliminate my position was made by higher level management." What I'd like to know about that sentence is whether in the conversation that you had with Mr. Anderson on the 15th that's what he told you?

A. [Plaintiff:] He told me it was a meeting with him and John Bruntz, his supervisor.

Q. Well, where you said here under oath in the complaint ... was that statement accurate at that time?

A. Yeah.

Q. That is what Mr. Anderson told you, wasn't it?

A. That it was by John Bruntz. He had a meeting with John Bruntz.

Q. And that Mr. Bruntz made the decision to eliminate your position? Is that what Mr. Anderson told you?

A. That Mr. Bruntz and him had come to the decision.... I'm telling you that that's what I was told. I'm guessing that it was a meeting between the two of them and Kermit Anderson was to relay it to me, but Kermit said that he was in the meeting and it was decided.

Q. Didn't Mr. Anderson make it clear to you that it was not his decision, that the decision had been made by people above him and he had been told to simply tell you?

A. He didn't tell me he was just told to simply tell me. He told me that he had known, that he was in a meeting.

Q. Did he tell you that he was a decision-maker at the meeting?

A. He didn't come out and tell me that he was a decision-maker at that meeting, no.

Nelson Depo. at 55–56.

The Court is mindful that it should not make credibility determinations or weigh testimony at this stage, and it believes it has not done so here. After looking fairly at the evidence, the Court finds that the Plaintiff's testimony establishes, at best, that Mr. Anderson, as general counsel for the company, was present at this above-referenced pre-termination meeting, and probably acted as an advisor at that meeting. Mr. Anderson appears to concede as much. *See* Anderson Depo. at 33 ("The only opinion that I was asked to express, or the only thing I was asked to comment on is whether or not I felt that there would be any legal problems with eliminating the paralegal position.... I said on the merits of it, clearly not, but there's no guarantee, as we know, that people won't sue, claims won't be brought."). Playing an "advisory" role, without more, however, is not sufficient for liability under Iowa discrimination law. *See Sahai,* 557 N.W.2d at 901. For the Plaintiff to successfully resist summary judgment in Mr. Anderson's favor, she must do more than show some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). On this rec-

ord, it is not a reasonable inference that Mr. Anderson controlled the company's decision to fire the Plaintiff. No trier of fact could find for the Plaintiff as against her supervisor. The Defendants' motion on Count III as to Mr. Anderson is therefore granted.

 Finally, in light of the Court's earlier findings that the Plaintiff may proceed with her federal pregnancy and sex discrimination claims against the Wittern Group, the Court similarly concludes that triable issues still exist with respect to her state law claims (of pregnancy and sex discrimination) against the Wittern Group. Accordingly, the Defendants' motion for summary judgment on Count III is denied to the extent it is brought against the Wittern Group.

### IV. Conclusion

In light of the foregoing, the Court enters the following order:

(1) motion to dismiss Count I (Title VII pregnancy discrimination claim) is **GRANTED** as to Defendant Anderson, and **DENIED** as to Defendant Wittern Group;

(2) motion to dismiss Count II (Title VII sex discrimination claim) is **GRANTED** as to Defendant Anderson, and **DENIED** as to Defendant Wittern Group; and

(3) motion to dismiss Count III (Chapter 216 sex and pregnancy claim) is **GRANTED** as to Defendant Anderson, and **DENIED** as to Defendant Wittern Group.

It is so **ORDERED.**