Patty ERICKSON–PUTTMANN,
Plaintiff,

v.

Patrick GILL and Woodbury County,
Iowa, Defendant.

No. C–01–4007–MWB.

United States District Court,
N.D. Iowa,
Western Division.

May 6, 2002.

Paul D. Lundberg, Hellige, Lundberg, Meis, Erickson & Frey, Sioux City, IA, for plaintiff.

Jeffrey A. Sar, Baron, Sar, Goodwin, Gill & Lohr, Douglas L. Phillips, Klass Stoik Mugan Villone & Phillips, LLP, Sioux City, IA, for defendant.

## MEMORANDUM OPINION AND ORDER REGARDING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

BENNETT, Chief Judge.

## TABLE OF CONTENTS

I.  INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 962
    A.  Procedural Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 962
    B.  Factual Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 964

II. LEGAL ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 966
    A.  Standards For Summary Judgment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 966
        1.  Requirements of Rule 56 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 967
        2.  The parties' burdens . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 967
        3.  Summary judgment in employment discrimination cases . . . . . . . . . . . . . . 968
    B.  Woodbury County's Motion For Summary Judgment . . . . . . . . . . . . . . . . . . . . 969
        1.  The prompt remedial action requirement . . . . . . . . . . . . . . . . . . . . . . . . 970
        2.  Woodbury County's response . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 971
    C.  Patrick Gill's Motion For Summary Judgment . . . . . . . . . . . . . . . . . . . . . . . . 973
        1.  Iowa common law claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 973
        2.  Sex discrimination claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 974
            a.  Title VII claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 974
            b.  ICRA claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 974

III. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 976

### I. INTRODUCTION

#### A. Procedural Background

On February 1, 2001, plaintiff Patty Erickson–Puttmann filed this sex discrimination lawsuit against her employer, Woodbury County, Iowa, and Patrick Gill. Erickson–Puttmann alleges in her complaint that she was subjected to sexual harassment during her employment with Woodbury County from the harassing conduct of defendant Gill. Specifically, in

Count I, Erickson–Puttmann alleges that she was subjected to sexual discrimination in the form of a hostile work environment, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* and the Iowa Civil Rights Act (ICRA), IOWA CODE Ch. 216. In Count II, Erickson–Puttmann alleges a state law claim for intentional interference with an employment relationship against defendant Gill and she alleges in Count III a state law claim against defendant Gill for abuse of process. Defendants filed answers to Erickson–Puttmann's complaint in which they deny all of these claims.

On January 2, 2002, defendants Woodbury County and Gill each filed a motion for summary judgment. In its motion, Woodbury County asserts that Erickson–Puttmann cannot establish a hostile work environment sexual discrimination claim because Woodbury took remedial action as extensive as Iowa law would permit. In his motion for summary judgment, Gill asserts that Erickson–Puttmann cannot establish a *prima facie* case of sex discrimination under Title VII because he was not her employer. On January 14, 2002, defendant Gill filed an Amended Motion For Summary Judgment in which he seeks to have summary judgment granted in his favor on each of Erickson–Puttmann's claims. Specifically, Gill renews his assertion that Erickson–Puttmann cannot establish a *prima facie* case of sex discrimination under Title VII because he was not her employer. He also contends that the ICRA does not allow for individual liability on the part of non-supervisory co-employees or co-employees without the authority over hiring and firing decisions. Gill further asserts that Erickson–Puttmann cannot make out a claim for intentional interference with an employment relationship against him because Erickson–Puttmann has suffered no adverse employment action. Finally, Gill contends that Erickson–Puttmann's state law claim against him for abuse of process must be dismissed because there is no evidence of any use of legal process by him. After obtaining an extension of time in which to respond to defendants' respective motions for summary judgment, Erickson–Puttmann filed timely resistances to both defendant Woodbury County's and Gill's respective motions for summary judgment on January 28, 2002. On February 14, 2002, after obtaining an extension of time, Erickson–Puttmann filed a timely response to defendant Gill's Amended Motion For Summary Judgment. In her response to defendant Gill's Motion For Summary Judgment, Erickson–Puttmann concedes that she is unable to make out Iowa common law claims for intentional interference with an employment relationship and abuse of process, and that summary judgment on Counts II and III is appropriate here. Defendant Gill then obtained an extension of time in which to file a reply brief in support of his motion for summary judgment. He filed his reply brief on March 5, 2002.

Pursuant to the parties' requests, the court held oral arguments on defendants' respective motions for summary judgment on May 1, 2002. At the oral arguments, plaintiff Erickson–Puttmann was represented by Paul D. Lundberg of Hellige, Lundberg, Meis, Erickson & Frey, Sioux City Iowa. Defendant Woodbury County was represented by Douglas L. Phillips of Klass, Stoos, Stoik, Mugan, Villone & Phillips, L.L.P., Sioux City, Iowa. Defendant Gill was represented by Jeffrey A. Sar of Baron, Sar, Goodwin, Gill & Lohr, Sioux City, Iowa.

The court turns first to a discussion of the undisputed facts as shown by the record, then to the standards applicable to motions for summary judgment and, finally, to the legal analysis of whether either of the defendants are entitled to summary

judgment on any of the claims at issue in this litigation.

### B. Factual Background

The following facts are either undisputed or viewed in the light most favorable to plaintiff Erickson–Puttmann as the non-moving party. Patty Erickson–Puttmann is employed by Woodbury County as Social Services Coordinator. She reports directly to the Woodbury County Board of Supervisors ("the Board"). Defendant Patrick Gill is the Woodbury County Auditor/Recorder. The Board has budgetary authority over the county auditor/recorder. Defendant Gill had no authority over Erickson–Puttmann in connection with her employment. Erickson–Puttmann claims that over a period of three years, commencing in August of 1997, Gill harassed her and created a hostile work environment for her and several other female employees. Erickson–Puttmann contends that Gill used his "position of authority" to threaten her with arrest and prosecution, accusing her of interfering with official investigations, violation of the Iowa Open Meetings Law, and conflict of interest. Specifically, Erickson–Puttmann claims the following incidents of harassment by Gill occurred:

a. 8–9–97. Mr. Gill, with no justification in fact tells the Woodbury County Board of Supervisor's [sic] legal counsel that Plaintiff should be immediately terminated for interference with an ongoing investigation of grant funds and that Plaintiff should be prohibited from speaking with one of the members of the Board of Supervisors until the investigation is completed.

b. 12–22–98. Plaintiff was confronted at work by agents of the Iowa Department of Criminal Investigation and the Federal Bureau of Investigation concerning an investigation of grant funds and was accused of "withholding evidence" from this investigation. Defendant Gill was responsible for this confrontation and had no basis in fact for accusing Plaintiff of criminal acts.

c. 2–29–99. Defendant Gill informs the Woodbury County Board of Supervisors that Plaintiff has failed to comply with his request for information. Plaintiff demonstrates to the Board her compliance with Mr. Gill's request within his timelines. Defendant Gill continues to deny receiving the information and requires Plaintiff to comply a second time.

d. August 1999. Mr. Gill suggests that Plaintiff has proposed using mental health funds for restoration of the 8th floor of the Woodbury County Courthouse and publicly questions the legality of use of these funds. Neither the Woodbury County Board of Supervisors or Plaintiff had ever committed to the use of these funds for restoration purposes.

e. 11–19–99. Defendant Gill accuses Plaintiff of refusing to turn over a tape recording of a meeting and accuses Plaintiff of violating the Iowa Open Records Law.

f. 7–28–00. Defendant Gill, without justification in fact, accuses Plaintiff of withholding public documents and requests that an assistant Woodbury County attorney have Plaintiff arrested and have Plaintiff's office searched.

g. 10–3–00. In response to the filing of Plaintiff's complaint with the Iowa Civil Rights Commission, Defendant Gill, in a televised interview suggests that Plaintiff's complaint is the result of Defendant Gill's prior investigation of an alleged embezzlement of grant funds. By this state-

ment, Defendant Gill falsely accuses Plaintiff of involvement in embezzlement of public funds, without any justification in fact, and does so in retaliation for the filing of Plaintiff's civil rights complaint.

Complaint at ¶ 10. Defendant Gill has denied these allegations. Erickson–Puttmann was not fired, discharged or disciplined in connection with anything done by Gill. Gill neither filed a civil lawsuit against Erickson–Puttmann nor filed criminal charges against her.

Erickson–Puttmann had twice previously complained to members of the Board regarding Gill's conduct. Erickson–Puttmann complained once to Maurice Welte in 1998 and once to Larry Clausen in 1999. After Erickson–Puttmann complained to Clausen, he told Gill "[b]asically not to mess with our employees" and that if he had a problem with the Board's employees to come to him or some other member of the Board and not to deal with the employee directly. Clausen Dep. at p. 10, Plaintiff Erickson–Puttmann's App. 21. Gill's conduct did not change as a result of Clausen's verbal warning to Gill.

In the winter or spring of 2000, Erickson–Puttmann verbally complained to Chairman Boykin regarding Gill. Erickson–Puttmann told Chairman Boykin that her relationship with Gill was not good and that she felt she was discriminated against in the way that she was treated by Gill. There is no record that Boykin or the Board took any action in response to this complaint.

On July 28, 2000, Erickson–Puttmann submitted a formal written complaint to George Boykin, the Chairman of the Board, accusing Gill of harassment. Erickson–Puttmann also called Supervisor Doug Walsh and said that she needed to leave work in response to Gill threatening her with arrest. Erickson–Puttmann told Supervisor Walsh that she couldn't take it

anymore. Erickson–Puttmann then went home. In response to Erickson–Puttmann's letter of complaint of July 28, 2000, the Board undertook an investigation. On August 2, 2000, the Board delivered to Gill a letter which provided as follows:

Patty Erickson–Puttmann, the County's Social Services Coordinator has lodged a formal complaint with the Board regarding yet another incident with you late last week.

As we understand this situation, you sent Ms. Jessen to Ms. Erickson–Puttmann's office to request a copy of a grant proposal. When the copy was not immediately provided, you enlisted the assistance of Assistant Woodbury County Attorney John Rusch, in an effort to have Ms. Erickson–Puttmann arrested for withholding public documents. This was short-sighted, unnecessary and entirely without justification.

Your reaction to this, and several previous matters involving County employees is completely unacceptable to the Board. In this instance, the materials you sought had been sent to the Board Office to be copied, and no one realized where the proposal was at the time you made your demand. You have, in the past, accused Ms. Erickson–Puttmann of being dishonest. You have insinuated that she acted unlawfully in the course of performing her assigned duties. You have harassed Ms. Erickson–Puttmann, others in her Department, and employees in other Departments, and almost single handedly created a hostile work environment in this building.

We take Ms. Erickson–Puttmann's complaint seriously: particularly when it comes on the heels of your most recent encounter with another County employee under the supervision of the Board. Your seeming inability to understand the limits of your authority, when com-

bined with the combative, threatening attitude toward County employees, has become intolerable. You have succeeded in making the courthouse an unpleasant place to work. You know this, because this is not the first time we have had to write a letter like this.

Unfortunately, the consequences of your ill-tempered behavior have gone beyond mere unpleasantries. Ms. Erickson–Puttmann is contemplating further action. Given a little encouragement, others may well join her. You are exposing the County to liability for no apparent reason beyond some inexplicable desire to generate turmoil.

Iowa Code Section 670.8 requires the County to defend its officers and employees against claims arising in the course of their employment. You are not Ms. Erickson–Puttmann's supervisor. You have no responsibility for evaluating her performance. If you have a complaint about how her work affects your ability to perform your statutory responsibilities, you should bring it to the attention of the Board. Threatening her, trying to intimidate her and ultimately seeking to have her arrested not only borders on abuse of process, it is completely outside the scope of your duties as an elected official.

Should you be sued in connection with this matter, or should the County be sued because of your actions, the County will take the position that because you were not acting in the scope of your employment as an elected official, it does not owe you a defense. In the event of an adverse judgment against you, the County will not indemnify you; and in the event of an adverse judgment against the County, we will seek indemnity from you personally.

The Board views your persistent, confrontational behavior as unacceptable. We have discussed this before, without appearing to make any progress. The Board has a legal responsibility to protect its employees from these attacks, and it takes that responsibility very seriously. We will continue to do whatever the law requires to insure that our employees enjoy a workplace that is free from all kinds of harassment.

Letter of August 2, 2000 at 1–2, Defendant Woodbury County's App. 22–23.

The Board has never used or considered using its budgetary powers over the county auditor/recorder to attempt to conform Gill's behavior. The Board has never discussed using the statutory process for removal of an elected official with respect to Gill. The Board has never requested the Woodbury County Attorney for a review of that process or an opinion on what would be required to institute that process.

## II. LEGAL ANALYSIS

### A. Standards For Summary Judgment

This court has considered in some detail the standards applicable to motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure in a number of prior decisions. *See, e.g., Swanson v. Van Otterloo,* 993 F.Supp. 1224, 1230–31 (N.D.Iowa 1998); *Dirks v. J.C. Robinson Seed Co.,* 980 F.Supp. 1303, 1305–07 (N.D.Iowa 1997); *Laird v. Stilwill,* 969 F.Supp. 1167, 1172–74 (N.D.Iowa 1997); *Rural Water Sys. # 1 v. City of Sioux Ctr.,* 967 F.Supp. 1483, 1499–1501 (N.D.Iowa 1997), *aff'd in pertinent part,* 202 F.3d 1035 (8th Cir.), *cert. denied,* 531 U.S. 820, 121 S.Ct. 61, 148 L.Ed.2d 28 (2000); *Tralon Corp. v. Cedarapids, Inc.,* 966 F.Supp. 812, 817–18 (N.D.Iowa 1997), *aff'd,* 205 F.3d 1347 (8th Cir.2000) (Table op.); *Security State Bank v. Firstar Bank Milwaukee, N.A.,* 965 F.Supp. 1237, 1239–40 (N.D.Iowa 1997); *Lockhart v. Cedar Rapids Community Sch. Dist.,* 963 F.Supp. 805 (N.D.Iowa 1997). The essen-

tials of these standards for present purposes are as follows.

### 1. Requirements of Rule 56

Rule 56 itself provides, in pertinent part, as follows:

Rule 56. Summary Judgment

(b) For Defending Party. A party against whom a claim ... is asserted ... may, at any time, move for summary judgment in the party's favor as to all or any part thereof.

(c) Motions and Proceedings Thereon.... *The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*

Fed.R.Civ.P. 56(a)–(c) (emphasis added). Applying these standards, the trial judge's function at the summary judgment stage of the proceedings is not to weigh the evidence and determine the truth of the matter, but to determine whether there are genuine issues for trial. *Quick v. Donaldson Co.,* 90 F.3d 1372, 1376–77 (8th Cir.1996); *Johnson v. Enron Corp.,* 906 F.2d 1234, 1237 (8th Cir.1990). An issue of material fact is genuine if it has a real basis in the record. *Hartnagel v. Norman,* 953 F.2d 394 (8th Cir.1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). As to whether a factual dispute is "material," the Supreme Court has explained, "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Rouse v. Benson,* 193 F.3d 936, 939 (8th Cir.1999);

*Beyerbach v. Sears,* 49 F.3d 1324, 1326 (8th Cir.1995); *Hartnagel,* 953 F.2d at 394.

### 2. The parties' burdens

Procedurally, the moving party bears "the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record which show lack of a genuine issue." *Hartnagel,* 953 F.2d at 395 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); *see also Rose–Maston,* 133 F.3d at 1107; *Reed v. Woodruff County, Ark.,* 7 F.3d 808, 810 (8th Cir.1993). "When a moving party has carried its burden under *Rule* 56(c), its opponent must do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348. Rather, the party opposing summary judgment is required under Rule 56(e) to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548; *Rabushka ex rel. United States v. Crane Co.,* 122 F.3d 559, 562 (8th Cir.1997), *cert. denied,* 523 U.S. 1040, 118 S.Ct. 1336, 140 L.Ed.2d 498 (1998); *McLaughlin v. Esselte Pendaflex Corp.,* 50 F.3d 507, 511 (8th Cir.1995); *Beyerbach,* 49 F.3d at 1325. If a party fails to make a sufficient showing of an essential element of a claim with respect to which that party has the burden of proof, then the opposing party is "entitled to judgment as a matter of law." *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. 2548; *In re Temporomandibular Joint (TMJ) Implants Prod. Liab. Litig.,* 113 F.3d 1484, 1492 (8th Cir.1997). In reviewing the record, the court must view all the facts in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences that can be drawn

from the facts. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S.Ct. 1348; *Quick*, 90 F.3d at 1377 (same).

### 3. Summary judgment in employment discrimination cases

■ Because this is an employment discrimination case, it is well to remember that the Eighth Circuit Court of Appeals has cautioned that "summary judgment should seldom be used in employment-discrimination cases." *Crawford v. Runyon*, 37 F.3d 1338, 1341 (8th Cir.1994) (citing *Johnson v. Minnesota Historical Soc'y*, 931 F.2d 1239, 1244 (8th Cir.1991); *Hillebrand v. M–Tron Indus., Inc.*, 827 F.2d 363, 364 (8th Cir.1987), *cert. denied*, 488 U.S. 1004, 109 S.Ct. 782, 102 L.Ed.2d 774 (1989)); *see also Snow v. Ridgeview Medical Ctr.*, 128 F.3d 1201, 1205 (8th Cir.1997) (citing *Crawford*); *Helfter v. United Parcel Serv., Inc.*, 115 F.3d 613, 615 (8th Cir. 1997) (quoting *Crawford*); *Chock v. Northwest Airlines, Inc.*, 113 F.3d 861, 862 (8th Cir.1997) ("We must also keep in mind, as our court has previously cautioned, that summary judgment should be used sparingly in employment discrimination cases," citing *Crawford*); *Smith v. St. Louis Univ.*, 109 F.3d 1261, 1264 (8th Cir.1997) (quoting *Crawford*); *Hardin v. Hussmann Corp.*, 45 F.3d 262 (8th Cir.1995) ("summary judgments should only be used sparingly in employment discrimination cases," citing *Haglof v. Northwest Rehabilitation, Inc.*, 910 F.2d 492, 495 (8th Cir.1990); *Hillebrand*, 827 F.2d at 364). Summary judgment is appropriate in employment discrimination cases only in "those rare instances where there is no dispute of fact and where there exists only one conclusion." *Johnson*, 931 F.2d at 1244; *see also Webb v. St. Louis Post–Dispatch*, 51 F.3d 147, 148 (8th Cir.1995) (quoting *Johnson*, 931 F.2d at 1244); *Crawford*, 37 F.3d at 1341 (quoting *Johnson*, 931 F.2d at 1244). To put it another way, "[b]ecause discrimination cases often depend on inferences rather than on direct evidence, summary judgment should not be granted unless the evidence could not support any reasonable inference for the nonmovant." *Crawford*, 37 F.3d at 1341 (holding that there was a genuine issue of material fact precluding summary judgment); *accord Snow*, 128 F.3d at 1205 ("Because discrimination cases often turn on inferences rather than on direct evidence, we are particularly deferential to the nonmovant," citing *Crawford*); *Webb v. Garelick Mfg. Co.*, 94 F.3d 484, 486 (8th Cir.1996) (citing *Crawford*, 37 F.3d at 1341); *Wooten v. Farmland Foods*, 58 F.3d 382, 385 (8th Cir.1995) (quoting *Crawford*, 37 F.3d at 1341); *Johnson*, 931 F.2d at 1244.

■ However, not long ago, the Eighth Circuit Court of Appeals also observed that, "[a]lthough summary judgment should be used sparingly in the context of employment discrimination cases, *Crawford v. Runyon*, 37 F.3d 1338, 1341 (8th Cir.1994), the plaintiff's evidence must go beyond the establishment of a prima facie case to support a reasonable inference regarding the alleged illicit reason for the defendant's action." *Landon v. Northwest Airlines, Inc.*, 72 F.3d 620, 624 (8th Cir.1995) (citing *Reich v. Hoy Shoe Co.*, 32 F.3d 361, 365 (8th Cir.1994)); *accord Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1134 (8th Cir.) (observing that the burden-shifting framework of *McDonnell Douglas* must be used to determine whether summary judgment is appropriate), *cert. denied*, 528 U.S. 818, 120 S.Ct. 59, 145 L.Ed.2d 51 (1999). More recently, in *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000), the Supreme Court reiterated that " '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.' " *Reeves*, 530 U.S. at 142, 120

S.Ct. 2097 (quoting *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).[1] Thus, what the plaintiff's evidence must show, to avoid summary judgment or judgment as a matter of law, is " '1, that the stated reasons were not the real reasons for [the plaintiff's] discharge; and 2, that age [or race, or sex, or other prohibited] discrimination was the real reason for [the plaintiff's] discharge.' " *Id.* at 153, 120 S.Ct. 2097 (quoting the district court's jury instructions as properly stating the law). The Supreme Court clarified in *Reeves* that, to meet this burden, "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, *may* permit the trier of fact to conclude that the employer unlawfully discriminated." *Id.* at 148, 120 S.Ct. 2097 (emphasis added).

The court will apply these standards to defendants' motions for summary judgment.

### B. Woodbury County's Motion For Summary Judgment

■ Plaintiff Erickson–Puttmann has asserted a claim of sexual harassment based upon a hostile work environment.[2] The five elements of a hostile work environment claim are that:

(1) she belongs to a protected group, (2) she was subject to unwelcome sexual harassment, (3) the harassment was based on sex, (4) the harassment affect-

ed a term, condition, or privilege of employment, and (5) the employer knew or should have known of the harassment in question and failed to take proper remedial action.

*Rheineck v. Hutchinson Tech., Inc.* 261 F.3d 751, 755–56 (8th Cir.2001); *accord Stuart v. General Motors Corp.*, 217 F.3d 621, 631 (8th Cir.2000) (that "(a) she is a member in a protected group; (b) she was subject to unwelcome sexual harassment; (c) the harassment was based on sex; (d) the harassment affected a term, condition, or privilege of employment; and (e) the employer knew or should have known of the harassment and failed to take proper remedial action."); *Klein v. McGowan,* 198 F.3d 705, 709 (8th Cir.1999) ("that (1) he is a member of a protected group; (2) unwelcome harassment occurred; (3) a causal nexus existed between the harassment and his protected group status; (4) the harassment affected a term, condition, or privilege of employment; and (5) his employer knew or should have known of the harassment and failed to take prompt and effective remedial action."); *Scusa v. Nestle U.S.A., Co.*, 181 F.3d 958, 965 (8th Cir. 1999) ("that (a) she belongs to a protected group; (b) that she was subject to unwelcome sexual harassment; (c) that the harassment was based on sex; (d) that the harassment affected a term, condition, or privilege of employment; and (e) that the employer knew or should have known of

---

**1.** In *Reeves,* the Supreme Court was considering a motion for judgment as a matter of law *after* a jury trial, but the Supreme Court also reiterated that "the standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.' " *Id.* at 150, 120 S.Ct. 2097 (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250–51, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Therefore, the standards articulated in *Reeves* are applicable to the present motion for summary judgment.

**2.** Iowa courts look to Title VII, its regulatory interpretations, and its case law in resolving sex discrimination claims and retaliation claims under the ICRA. *See Vivian v. Madison,* 601 N.W.2d 872 (Iowa 1999); *Hulme v. Barrett,* 449 N.W.2d 629, 631 (Iowa 1989); *King v. Iowa Civil Rights Comm'n,* 334 N.W.2d 598, 601 (Iowa 1983). Therefore, while the court's analysis of Woodbury County's Motion For Summary Judgment will refer only to Title VII, it also applies to Erickson–Puttmann's sex discrimination and retaliation claims under the ICRA.

the harassment and failed to take proper remedial action."); *Howard v. Burns Bros., Inc.,* 149 F.3d 835, 840 (8th Cir. 1998) ("To prove that she was subjected to a hostile work environment in violation of Title VII, [plaintiff] had to show that: '(1) she belongs to a protected group; (2) she was subject to unwelcome sexual harassment; (3) the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of employment; and (5) [defendants] knew or should have known of the harassment and failed to take proper remedial action.'") (quoting *Kopp v. Samaritan Health Sys., Inc.,* 13 F.3d 264, 269 (8th Cir.1993)); *Bales v. Wal–Mart Stores, Inc.,* 143 F.3d 1103, 1106 (8th Cir.1998) ("There are five elements that [plaintiff] was required to prove to prevail on her claim: that she was a member of a protected group, that she was subjected to unwelcome harassment in the workplace, that the harassment was based on sex, that the harassment affected a 'term, condition, or privilege of employment,' and that [defendant] 'knew or should have known of the harassment and failed to take proper remedial action.'") (quoting *Todd v. Ortho Biotech, Inc.,* 138 F.3d 733, 736 (8th Cir.1998)); *Callanan v. Runyun,* 75 F.3d 1293, 1296 (8th Cir.1996) ("'(1) she belongs to a protected group; (2) she was subject to unwelcome sexual harassment; (3) the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of employment; and (5) [her employer] knew or should have known of the harassment and failed to take proper remedial action.'") (quoting *Kopp,* 13 F.3d at 269).

▋ The United States Supreme Court has instructed that in order for a work environment to be actionable, a "sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v.*

*City of Boca Raton,* 524 U.S. 775, 787, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) (citing *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21–22, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). When determining whether the alleged conduct rises to an actionable level, a court must examine "the circumstances" including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 787–88, 118 S.Ct. 2275 (quotations and citation omitted). The standards for judging hostility must be "sufficiently demanding to ensure that Title VII does not become a 'general civility code.'" *Id.* at 788, 118 S.Ct. 2275 (citation omitted).

Keeping these requirements in mind, the court turns its attention to consideration of Woodbury County's assertion that Erickson–Puttmann cannot establish a hostile work environment sexual discrimination claim because Woodbury County took proper remedial action.

### 1. The prompt remedial action requirement

▋ The Eighth Circuit Court of Appeals has instructed that "[o]nce an employee complains to her employer about sexual harassment by a coworker, the employer is on notice and must take proper remedial action to avoid liability under Title VII." *Hathaway v. Runyon,* 132 F.3d 1214, 1222 (8th Cir.1997) (citing *Davis v. Tri–State Mack Distrib., Inc.,* 981 F.2d 340, 343 (8th Cir.1992)); *Zirpel v. Toshiba Am. Information Sys., Inc.,* 111 F.3d 80, 81 (8th Cir.1997) (finding an employer must take prompt remedial action after it knew or should have known of harassment). In addition to conducting an investigation, the employer must take " 'prompt remedial action reasonably calculated to

end the harassment.'" *Hathaway,* 132 F.3d at 1222 (citing *Davis,* 981 F.2d at 343); *Zirpel,* 111 F.3d at 81 (holding that summary judgment was properly granted in an employer's favor because the employer "promptly took 'remedial action . . . reasonably calculated to end the harassment'" once it knew or should have known about a harassing co-employee's behavior, citing *Kopp v. Samaritan Health Sys., Inc.,* 13 F.3d 264, 269 (8th Cir.1993)). The employer cannot avoid liability by doing nothing simply because the co-worker denies that the harassment occurred. *Hathaway,* 132 F.3d at 1222 (citing *Fuller v. City of Oakland,* 47 F.3d 1522, 1529 (9th Cir.1995)). Indeed, an employer may take remedial action even where a complaint is uncorroborated. *Hathaway,* 132 F.3d at 1222 (citing *Knabe v. Boury Corp.,* 114 F.3d 407, 409, 413 & n. 11 (3d Cir.1997)).

▮ The Eighth Circuit Court of Appeals has observed that factors a court may consider when assessing the reasonableness of an employer's remedial measures include:

> the amount of time elapsed between the notice of harassment, which includes but is not limited to a complaint of sexual harassment, and the remedial action, and the options available to the employer such as employee training sessions, disciplinary action taken against the harasser(s), reprimands in personnel files, and terminations, and whether or not the measures ended the harassment.

*Stuart,* 217 F.3d at 633 (citing *Carter v. Chrysler Corp.,* 173 F.3d 693, 702 (8th Cir.1999)); *accord Rheineck,* 261 F.3d at 756 (citing *Stuart*). Options for appropriate remedial action include taking disciplinary action to stop the harassment; transferring the alleged harasser to a different area where he or she would not come in contact with the complainant; scheduling the individuals involved on different shifts; putting a signed written warning or reprimand in personnel files; or placing the offending employee on probation pending any further complaints. *Hathaway,* 132 F.3d at 1222 (citing *Knabe,* 114 F.3d at 413; *Zirpel,* 111 F.3d at 81; *Intlekofer v. Turnage,* 973 F.2d 773, 780 & n. 9 (9th Cir.1992); *Ellison v. Brady,* 924 F.2d 872, 881–82 (9th Cir.1991); *Barrett v. Omaha Nat'l Bank,* 726 F.2d 424, 426 (8th Cir.1984)).

### 2. Woodbury County's response

Woodbury County asserts that it properly and promptly responded to Erickson–Puttmann's complaints regarding Gill but that it had no options to actually prevent Gill from repeating his abusive conduct because his position as Woodbury County Auditor/Recorder is not controlled by the Woodbury County Board of Supervisors. Erickson–Puttmann responds that genuine issues of material fact have been generated as to both the promptness of the Board's actions and whether its actions were reasonably calculated to end the harassment.

▮ The court notes that Erickson–Puttmann first complained in 1998 to the Board's chairman regarding what she viewed as abusive conduct by Gill. There is no evidence of any response to that initial complaint. When Erickson–Puttmann complained to Chairman Clausen in 1999, Clausen met with Gill and verbally told him "[b]asically not to mess with our employees" and that if he had a problem with the Board's employees to come to him or some other member of the Board and not to deal with the employee directly. Clausen Dep. at p. 10, Plaintiff Erickson–Puttmann's App. 21. Gill's conduct, however, did not change as a result of Clausen's verbal warning to Gill. In the Winter or Spring of 2000, Erickson–Puttmann complained about Gill to Chairman Boykin. Again, there is no evidence of any response to that complaint. Only after Er-

ickson–Puttmann made a formal written complaint on July 28, 2000, did the Board respond to her complaints regarding Gill by sending Gill the letter of August 2, 2000. A jury could determine from this evidence that the Board failed to exercise reasonable care in promptly responding to Erickson–Puttmann's complaints abut Gill. *See Ogden v. Wax Works, Inc.,* 214 F.3d 999, 1007 (8th Cir.2000).

The court further concludes that a genuine issue of material fact has been generated on the question of whether the Board took appropriate actions which were reasonably calculated to end the harassment. Woodbury County asserts that under Iowa law it was powerless to take remedial action against Gill to halt his conduct toward Erickson–Puttmann. The powers of an Iowa County are set out in Iowa Code § 331.301. Iowa Code § 331.301 provides in relevant part that:

1. A county may, except as expressly limited by the Constitution, and if not inconsistent with the laws of the general assembly, exercise any power and perform any function it deems appropriate to protect and preserve the rights, privileges, and property of the county or of its residents, and to preserve and improve the peace, safety, health, welfare, comfort, and convenience of its residents. This grant of home rule powers does not include the power to enact private or civil law governing civil relationships, except as incident to an exercise of an independent county power.

2. A power of a county is vested in the board, and a duty of a county shall be performed by or under the direction of the board except as otherwise provided by law.

3. The enumeration of a specific power of a county, the repeal of a grant of power, or the failure to state a specific power does not limit or restrict the general grant of home rule power conferred by the Constitution and this section. A county may exercise its general powers subject only to limitations expressly imposed by a state law.

4. An exercise of a county power is not inconsistent with a state law unless it is irreconcilable with the state law.

IOWA CODE § 331.301(1)–(4). The scope and duties of the offices of county auditor and county recorder are also both set out in Iowa Code Chapter 331. *See* IOWA CODE §§ 331.501–331.512 (county auditor); IOWA CODE §§ 331.601–331.611 (county recorder). While Iowa Code Chapter 331 is entirely silent with respect to granting the county board of supervisors direct supervisory responsibilities over the offices of county auditor or county recorder, the Board is not quite as toothless to protect its employees from harassment by a county official as it professes. The Board could have issued a written letter of warning to Gill at a much earlier date than it did in this case. The Board also had the option of sending Gill a formal letter of protest in which it could have warned Gill of the possibility of their filing a petition for removal pursuant to Iowa Code Chapter 331 or threatened to refer the matter to the Woodbury County Attorney for investigation into whether a petition for removal should be filed due to his conduct. Moreover, if such a letter had proved ineffective, there is no restriction in Chapter 331 which would prohibit or prevent a county board of supervisors from themselves seeking the removal from office of an elected county official who is sexually harassing county employees through the creation of a hostile work environment. Removal of an elected Iowa county official is governed by Iowa Code Chapter 66:

Any appointive or elective officer, except such as may be removed only by impeachment, holding any public office in the state or in any division or municipality thereof, may be removed from office

by the district court for any of the following reasons:

1. For willful or habitual neglect or refusal to perform the duties of the office.

2. For willful misconduct or maladministration in office.

3. For corruption.

4. For extortion.

5. Upon conviction of a felony.

6. For intoxication, or upon conviction of being intoxicated.

7. Upon conviction of violating the provisions of chapter 56.

IOWA CODE § 66.1A.[3] Section 66.3 limits who may file a petition for removal to the following:

1. By the attorney general in all cases.

2. As to state officers, by not fewer than twenty-five electors of the state.

3. As to any other officer, by five registered voters of the district, county, or municipality where the duties of the office are to be performed.

4. As to district officers, by the county attorney of any county in the district.

5. As to all county and municipal officers, by the county attorney of the county where the duties of the office are to be performed.

IOWA CODE § 66.3. Because there are five supervisors on the Board, the Board could have, pursuant to Iowa Code § 66.3(3), taken it upon themselves to file a petition for Gill's removal if they believed his conduct created a hostile work environment in violation of Title VII and the ICRA.[4] The

Board, however, took none of these actions in an attempt to curb Gill's conduct. The court notes that the Second Circuit Court of Appeals has held that " '[i]f the evidence creates an issue of fact as to whether an employer's action is effectively remedial and prompt, summary judgment is inappropriate.' " *Richardson v. New York State Dep't of Correctional Serv.*, 180 F.3d 426, 440 (2d Cir.1999) (quoting *Gallagher v. Delaney*, 139 F.3d 338, 348 (2d Cir. 1998)). Here, the court concludes that genuine issues of material fact have been generated as to whether the Board's actions were sufficiently prompt and effective to relieve it of liability for the allegedly hostile work environment of which it had knowledge such that summary judgment is inappropriate. Accordingly, Woodbury County's Motion For Summary Judgment is **denied.**

### C. Patrick Gill's Motion For Summary Judgment

#### 1. Iowa common law claims

Defendant Gill contends that Erickson–Puttmann cannot make out a claim for intentional interference with an employment relationship because she has suffered no adverse employment action. Defendant Gill also asserts that Erickson–Puttmann's state law claim for abuse of process must be dismissed because there is no evidence of any use of legal process by him. Erickson–Puttmann concedes that she is unable to make out Iowa common law claims for intentional interference with an employment relationship and abuse of process. Therefore, the court concludes that sum-

---

3. The Iowa Supreme Court has held that in order to establish "willful misconduct" as a ground for removal, "it is necessary to show a breach of duty committed knowingly and with a purpose to do wrong." *State v. Callaway*, 268 N.W.2d 841, 842 (Iowa 1978).

4. This is not meant to be an indication that the court believes that the Board was re-

quired to seek Gill's removal in order to be found to have taken appropriate actions which were reasonably calculated to end the harassment. Rather, the court is merely pointing out that the Board did not have an empty quiver of remedies in the face of alleged abusive conduct by a Woodbury County official.

mary judgment on Counts II and III is appropriate here and **grants** defendant Gill's motion with respect to those claims.

### 2. Sex discrimination claims

#### a. Title VII claim

In his motion, defendant Gill asserts that Erickson–Puttmann cannot establish a *prima facie* case of sex discrimination under Title VII because he was not her employer. In her response, Erickson–Puttmann concedes that her Title VII claim against Gill fails because Gill was not her employer. *See e.g., Bonomolo–Hagen v. Clay Central–Everly Community Sch. Dist.,* 121 F.3d 446, 447 (8th Cir.1997) ("Our Court quite recently has squarely held that supervisors may not be held individually liable under Title VII." (citing *Spencer v. Ripley County State Bank,* 123 F.3d 690, 691–92 (8th Cir.1997) (*per curiam*))). *Lenhardt v. Basic Inst. of Tech., Inc.,* 55 F.3d 377, 381 (8th Cir.1995) (noting that "[e]very circuit that has considered the issue ultimately has concluded that an employee, even one possessing supervisory authority, is not an employer upon whom liability can be imposed under Title VII."); *Smith v. St. Bernards Reg'l Med. Ctr.,* 19 F.3d 1254, 1255 (8th Cir. 1994) (holding that a Title VII plaintiff could not hold co-workers liable in their individual capacities under Title VII). Therefore, the court concludes that summary judgment with respect to Erickson–Puttmann's Title VII claim against defendant Gill is appropriate here and **grants** defendant Gill's motion with respect to that claim.

#### b. ICRA claim

Defendant Gill also moves for summary judgment on Erickson–Puttmann's claim against him in his individual capacity because Iowa law doesn't allow for individual non supervisory liability. Erickson–Puttmann responds that a person may be held individually liable under the ICRA even though that person acts in a non-supervisory capacity.

Title VII differs from the ICRA in one key aspect. While Title VII restricts the prohibition on unlawful practices to "an employer," *see* 42 U.S.C. § 2000e–2, the ICRA provides in pertinent part that:

1. It shall be an unfair or discriminatory practice for any:

a. *Person* to refuse to hire, accept, register, classify, or refer for employment, to discharge any employee, or to otherwise discriminate in employment against any applicant for employment or any employee because of the age, race, creed, color, sex, national origin, religion, or disability of such applicant or employee, unless based upon the nature of the occupation. If a person with a disability is qualified to perform a particular occupation, by reason of training or experience, the nature of that occupation shall not be the basis for exception to the unfair or discriminating practices prohibited by this subsection.

Iowa Code § 216.6(1)(a) (emphasis added).[5] Only a select few decisions of the Iowa Supreme Court have explored the contours of individual liability under the ICRA.[6] In

---

5. The ICRA defines persons liberally to mean: "one or more individuals, partnerships, associations, corporations, legal representatives, trustees, receivers, and the state of Iowa and all political subdivisions and agencies thereof." Iowa Code § 216.2(11).

6. As the court indicated to the parties at oral argument, given the paucity of Iowa authorities interpreting the language of § 216.6(1)(a), the court has given serious consideration to certifying a question to the Iowa Supreme Court, pursuant to Local Rule of the United States District Court for the Northern District of Iowa 83.10 and Iowa Code § 684A.1, concerning the scope of individual liability under Chapter 216. Whether a federal district court should certify a question of state law to the

*Vivian v. Madison,* 601 N.W.2d 872 (Iowa 1999), the Iowa Supreme Court, in answering a certified question of state law presented to it by a federal district court, held that under Iowa Code section 216.6, an individual supervisor can be subjected to individual liability. *Id.* at 878. The Iowa Supreme Court noted that the ICRA uses the word "person," along with employer, when describing who or what is prohibited from discrimination or unfair practices in the work places, and this differed from Title VII, the law upon which the ICRA was modeled.[7] *Id.* at 873. The court concluded that:

> The legislature's use of the words "person" and "employer" in section 216.6(1), and throughout the chapter, indicates a clear intent to hold a "person" subject to liability separately and apart from the liability imposed on an "employer." A contra interpretation would strip the word "person" of any meaning and conflict with our maxim of statutory evaluation that laws are not to be construed in such a way as to render words superfluous.

*Id.* at 878. The decision in *Vivian,* however, is not controlling precedent here be-

cause it is uncontested that Gill did not occupy a supervisor role with respect to Erickson–Puttmann. Nonetheless, the *Vivian* decision provides helpful insight into the scope of individual liability under Chapter 216.

The court in *Vivian* looked to its prior decision in *Sahai v. Davies,* 557 N.W.2d 898 (Iowa 1997) to define the scope of liability under Chapter 216. In *Sahai,* an employee was denied a job on the basis of advice given by a physician, who believed no pregnant woman should undertake the work involved. *Id.* at 902. The physician passed this advice on to the employer. Although the Iowa Supreme Court assumed that an employer would violate the ICRA if it rejected a job application on such a basis, the court rejected the ICRA claim against the physician, even though the physician's advice appears to have played a part in the employer's decision not to hire the plaintiff. *Id.* at 901. The court denied individual liability against the physician because he was not in a position to control the company's hiring decisions but was merely providing an advisory opinion. *Id.* The significance of this determination is that the Iowa Supreme Court

---

state's highest court is a matter "committed to the discretion of the district court." *Allstate Ins. Co. v. Steele,* 74 F.3d 878, 881–82 (8th Cir.1996) (citing *Lehman Bros. v. Schein,* 416 U.S. 386, 391, 94 S.Ct. 1741, 40 L.Ed.2d 215 (1974)); *Packett v. Stenberg,* 969 F.2d 721, 726 (8th Cir.1992) (also citing *Lehman Bros.*). A court may also consider the following factors in determining whether to certify a question to the state supreme court: (1) the extent to which the legal issue under consideration has been left unsettled by the state courts; (2) the availability of legal resources which would aid the court in coming to a conclusion on the legal issue; (3) the court's familiarity with the pertinent state law; (4) the time demands on the court's docket and the docket of the state supreme court; (5) the frequency that the legal issue in question is likely to recur; and (6) the age of the current litigation and the possible prejudice to the

litigants which may result from certification. *Olympus Alum. Prod. v. Kehm Enters., Ltd.,* 930 F.Supp. 1295, 1309 n. 10 (N.D.Iowa 1996) (citing *Rowson v. Kawasaki Heavy Indus., Ltd.,* 866 F.Supp. 1221, 1225 & n. 5 (N.D.Iowa 1994) (citing *L. Cohen & Co. v. Dun & Bradstreet, Inc.,* 629 F.Supp. 1419, 1423–24 (D.Conn.1986))). The court concludes that the balance of these six factors weigh against certification of a question to the Iowa Supreme Court concerning the scope of individual liability under Chapter 216.

**7.** The Iowa Supreme Court also identified two other differences between the ICRA and Title VII: the provision in the ICRA prohibiting the aiding or abetting of discriminatory practices, Iowa Code § 216.11, and the broader remedies available under the ICRA. *Vivian,* 601 N.W.2d at 876.

has limited individual liability under Chapter 216 to those actors who have some significant control over employment decisions effecting the plaintiff. The only published federal court decision to date on the subject, *Nelson v. Wittern Group, Inc.*, 140 F.Supp.2d 1001, 1009 (S.D.Iowa 2001), reached just this conclusion, holding that:

> Before an individual may be found liable under Iowa civil rights law, he or she must be found to have "control [of] the company's hiring decisions." *Vivian*, 601 N.W.2d at 876 (citing *Sahai v. Davies*, 557 N.W.2d 898, 901 (Iowa 1997)).

*Id.* In *Nelson*, the court granted summary judgment on Chapter 216 sex discrimination claims against the plaintiff's supervisor because the record did not implicate him in the decision to terminate the plaintiff's employment. *Id.*

▆▆▆ The *Nelson* decision, and the Iowa Supreme Court's decisions underlying it, are in keeping with the express language of Iowa Code § 216.6(1)(a) which limits discriminatory acts to acts which imply that the actor has decision making authority over employment actions. Here, Gill had no such decision making authority over Erickson–Puttmann. The court, therefore, concludes that individual liability under the ICRA will not lie against a non-supervisory official who exercises no decision making authority over the employment actions effecting a plaintiff. Accordingly, defendant Gill's Motion For Summary judgment is **granted**.

### III. CONCLUSION

The court initially concludes that genuine issues of material fact have been generated as to whether the Board's actions were sufficiently prompt and effective to relieve it of liability for the allegedly hostile work environment. Accordingly, Woodbury County's Motion For Summary Judgment is **denied**. Erickson–Puttmann concedes that she cannot establish her Iowa law claims against Gill for intentional interference with an employment relationship and abuse of process nor her claim for sexual discrimination under Title VII. Therefore, defendant Gill's Motion for Summary Judgment is **granted** with respect to Erickson–Puttmann's claims against Gill for intentional interference with an employment relationship, abuse of process, and sexual discrimination under Title VII. Finally, with respect to Erickson–Puttmann's claim against Gill under the ICRA, the court concludes that individual liability under the ICRA will not lie against a non-supervisory official who exercises no decision making authority over the employment actions effecting a plaintiff. Because Gill exercised no such authority over Erickson–Puttmann, defendant Gill's Motion For Summary Judgment is also **granted** as Erickson–Puttmann's ICRA claim against defendant Gill.

**IT IS SO ORDERED.**